**HORIZON OUTDOOR, LLC, et al., Plaintiffs,**

v.

**CITY OF INDUSTRY, CALIFORNIA, Defendant.**

**No. CV023465ABCPLAX.**

United States District Court, C.D. California.

Oct. 21, 2002.

Brian Shapiro, Esq., Lawrence D. Rohlfing Law Offices, Santa Fe Springs, E. Adam Webb, Esq., Atlanta, GA, for Plaintiff/Petitioner/Appellant.

Bruce Gridley, Esq.; Joseph Buchman, Esq.; Anthony Taylor, Esq., Burke Williams & Sorensen, Los Angeles, for Defendant/Respondent/Appellee.

ORDER RE: PLAINTIFFS' MOTION ON DEFENDANT'S SUGGESTION OF MOOTNESS; PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COLLINS, District Judge.

This case involves a First Amendment challenge to Defendant City of Industry's ("Defendant's" or the "City's") ordinance regulating advertising displays and other outdoor signs. Pending before the Court are (1) the Motion in Response to Defendant's Suggestion of Mootness (the "Motion") filed by Plaintiffs Horizon Outdoor, LLC ("Horizon") and Adam Sussman ("Sussman," and together with Horizon, "Plaintiffs") and (2) Plaintiffs' Motion for a Preliminary Injunction enjoining enforcement of Defendant's original sign ordinance. Plaintiffs' Motion in Response to Defendant's Suggestion of Mootness came on regularly for hearing on October 21, 2002. The Court withheld issuance of an order with respect to Plaintiffs' Motion for Preliminary Injunction on July 22, 2002, because the City raised issues of Horizon's standing and mootness based on Defendant's alleged implementation of a new ordinance. Having resolved those issues in Plaintiffs' favor, the matter is placed back on calendar on October 21, 2002. Having considered the parties' filings and arguments of counsel, the Court hereby GRANTS (1) Plaintiffs' Motion in Response to Defendant's Suggestion of Mootness and (2) Plaintiffs' Motion for a Preliminary Injunction for the reasons stated below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Horizon is a limited liability company organized under the laws of the State of Georgia and in the business of buying or leasing land upon which to construct signs to be used for the dissemination of both commercial and noncommercial speech. First Amended Complaint ("FAC") ¶ 1, 9. Plaintiff Sussman is a resident of the State of California and the owner and representative of Horizon. FAC ¶ 2. Defendant City of Industry is a political subdivision of California located in the Los Angeles area and has no residential zoning. FAC ¶ 3, Decl. of Mike Kissell ¶ 2; Decl. of Ralph D. Hanson ¶ 2. Defendant adopted an ordinance regulating display of advertising signs ("Sign Ordinance") in June 1961, Decl. of Anthony R. Taylor, Ex. K to Complaint, and amended it in August 1993, *id.* Ex. J, and again in May 1999, *id.* Ex. I. *See also* Ex. A to the Complaint.

The Sign Ordinance provides, in relevant part, that "[n]o sign or advertising matter of any kind shall be placed or maintained on any property in the city without first obtaining a permit from the city manager." Sign Ordinance § 15.32.010B. Fur-

ther, "no off-site advertising display shall be placed or maintained within six hundred sixty feet from the edge of the right-of-way of, and the copy of which is visible from, any interstate or primary highway, unless the applicant for the display first demonstrates approval of the California Department of Transportation or other applicable state agency in accordance with Section 5405(e) of the California Business and Professions Code." *Id.* § 15.32.030.

An "off-site advertising display" is defined as "any outdoor sign which advertises goods, products, services or facilities not sold, produced or conducted on the premises on which the sign is located . . . ." *Id.* § 15.32.050. Off-site advertising displays are only permitted if they were lawfully erected prior to July 1, 1996. *See id.* §§ 15.32.060J; 15.32.070L(1).[1] Any other sign "not specifically permitted" by the Sign Ordinance is also prohibited. *Id.* § 15.32.060K.[2]

The Sign Ordinance allows the city manager to issue permits for specific kinds and sizes of signs for shopping centers, freestanding commercial stores, office buildings, gasoline service stations, theaters, drive-through businesses, automobile agencies, real estate for sale or lease, industrial buildings, and charity events. *Id.* § 15.32.070B—15.32.070K. Any violation of the Sign Ordinance is a misdemeanor. *Id.* § 15.32.070A(3). Nonconforming signs may be ordered removed, without compensation. *Id.* § 15.32.080B(1).

No sign may be erected without permission of the owner of the property. *Id.* § 15.32.010A. Plaintiffs signed leases with two landowners in the City of Industry that would allow Horizon to post off-site advertising displays on the properties. Decl. of Adam Sussman ¶ 4. Those properties, as well as a third where Horizon has subsequently obtained permission to post signs, are located in heavily commercial areas along Interstate 60. *Id.* ¶ 6. Plaintiffs submitted two applications for the first two properties on April 18, 2002. *Id.* ¶ 7.[3] On April 19, 2002, the City sent Horizon a letter stating:

> Your applications for sign approvals at 17008 Evergreen Place and 17050 Evergreen Place cannot be processed and are enclosed. The proposed signs are not permitted in the City of Industry.

Decl. of Anthony R. Taylor Ex. G.; Ex. A to Opp'n to Plaintiffs' Motion re: Mootness.

Horizon filed a complaint on April 26, 2002, alleging that the Sign Ordinance violated the free speech rights guaranteed by the federal and state constitutions. Horizon filed a motion for preliminary injunction on May 9, 2002, noticed for hearing on June 10, 2002. On May 28, 2002, after the parties stipulated to extend the briefing schedule, the Court continued the hearing on the motion to June 24, 2002. Defendant filed an Opposition on June 3, 2002. Horizon filed a Reply on June 10, 2002. On June 24, 2002, the Court continued the hearing at the request of the parties to allow them to engage in settlement negotiations. On July 17, 2002, the parties filed a joint status report indicating that the City had rejected Horizon's settlement of-

---

**1.** The Sign Ordinance provides for the replacement, repair, and relocation of pre-existing off-site advertising displays. Sign Ordinance § 15.32.070L(1), (4).

**2.** Prohibited signs include pole signs except for shopping centers, roof signs, wall signs that extend above the building, rotating and animated signs, portable signs, vehicle-mounted signs, balloons or other inflatable signs, flags that are not government flags, banners except those that are allowed as temporary signs, and projecting signs. Sign Ordinance § 15.32.060A–I.

**3.** Neither party has provided the Court complete copies of these applications.

fer.[4] In response to Plaintiffs' complaint challenging the constitutionality of the Sign Ordinance, on July 10, 2002, Defendant adopted Ordinance No. 681–U (the "Urgency Ordinance"), an interim sign ordinance, and commenced work on a new ordinance adopted by the City Council on September 12, 2002 and effective as of October 12, 2002. Opp'n to Plaintiffs' Motion re: Mootness at 9:13–15, Defendant's Separate Statement of Facts at 2:9–26 and Ex. A, October 15, 2002 Joint Status Report at 3:8–9.

On August 5, 2002, Defendant filed a motion to dismiss Horizon's complaint for lack of standing. The motion was set for hearing on September 9, 2002. On August 20, 2002, Plaintiffs filed the FAC, adding Sussman as a plaintiff. Plaintiffs also filed a response to Defendant's motion. The Court struck Defendant's motion to dismiss for lack of standing as moot on August 22, 2002 and the scheduled hearing date was vacated.

On September 3, 2002, the parties filed their joint status report with the Court. On September 6, 2002, Plaintiffs filed its Motion in Response to Defendant's Suggestion of Mootness, claiming that Defendant has suggested that Plaintiffs' constitutional challenge of the Sign Ordinance should be dismissed as moot as a result of Defendant's proposed sign regulations. Motion re: Mootness at 1:24–25. At the scheduling conference held on September 9, 2002, the Court set a briefing schedule on the issue of mootness. On September 24, 2002, Defendant filed a motion to dismiss.[5] On October 1, 2002, Plaintiffs filed their reply.

## II. DISCUSSION

### A. MOOTNESS

In their Motion, Plaintiffs contend that (1) Defendant has failed to establish that the conduct challenged is sufficiently unlikely to occur to render Plaintiffs' claims moot; (2) their damages cannot be rendered moot by the passage of new regulations; and (3) their challenge to the restrictions contained in the Sign Ordinance is not moot because Plaintiffs obtained vested rights to post signs under those regulations.[6]

In its Opposition, Defendant argues that (1) the restrictions contained in the new ordinance are constitutionally permissible; (2) no legal purpose will be achieved by enjoining a superseded ordinance; and (3) Plaintiffs secured no vested rights in their applications.

### 1. Defendant Has Not Demonstrated that its Unconstitutional Conduct Will Not Occur in the Future.

■ "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct.

4. The parties failed to deliver a courtesy copy of the report to chambers, as directed by the Court's July 1, 2002, Minute Order. The parties are admonished to carefully follow the Court's orders.

5. As the Court previously indicated at the Scheduling Conference that the operative brief on this subject would be Plaintiffs' Motion, the Court regards Defendant's motion as an opposition to Plaintiffs' Motion, and disregards those sections of Defendant's motion that are beyond the scope of Plaintiffs' Motion.

6. As for Plaintiffs' additional arguments, that Court finds that the constitutionality of the new ordinances and Defendant's delay in passing a new permanent ordinance are factors in determining whether Defendant can establish that the challenged conduct will not occur in the future, and need not be addressed separately.

1070, 71 L.Ed.2d 152 (1982). However, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful conduct could not be reasonably expected to recur." *Id.* at 289 n. 10, 102 S.Ct. 1070. The defendant has the burden of showing that the "likelihood of further violations is sufficiently remote to make injunctive relief unnecessary." *See id.*

In *National Advertising Company v. City of Ft. Lauderdale ("Ft. Lauderdale I")*, the court found that the plaintiff's claims under the challenged sign code were not moot because "it remain[ed] uncertain whether the City would return the sign code to its original form if it managed to defeat jurisdiction." 934 F.2d 283, 286 (11th Cir.1991). *See also National Advertising Company v. Town of Babylon,* 900 F.2d 551, 554 n. 2 (2nd Cir.1990) ("A voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date.")

In response to Plaintiffs' suit, Defendant enacted the Urgency Ordinance on July 10, 2002, pending passage of Ordinance No. 684 (the "New Ordinance"). September 3, 2002 Joint Status Report at 2:19–20, Ex. A to Defendant's Separate Statement of Status. The Urgency Ordinance incorporates by reference many of the provisions of the Sign Ordinance, which Plaintiffs have challenged on First Amendment grounds. The New Ordinance became effective on October 12, 2002. October 15, 2002 Joint Status Report at 3:8–9, Ex. A to Joint Status Report.

Plaintiffs contend that both the Urgency Ordinance and the New Ordinance contain constitutionally repugnant provisions and demonstrate Defendant's intention to continue to violate the First Amendment. According to Plaintiffs, the Urgency Ordinance is content-based and provides city officials with impermissible discretion. Motion at 6:20–21, 7:4–5. For example, the Urgency Ordinance bans certain types of signs with commercial messages, and continues to regulate signs based on content, *see e.g.* Urgency Ordinance § 4(E),(K)(banning flags and portable signs); § 4(R)(banning off-site messages); § 5(B),(C)(allowing on-site signs based on content). The Urgency Ordinance also bans all signs on public property unless previously approved by Defendant and allows Defendant to regulate content based on its determination that "the sign communicates a fact or attribute of that property which is of interest to the general public." Urgency Ordinance § 4(C), § 5(C). It also bans certain types of signs, including pennants, streamers and banners, in their entirety. Urgency Ordinance § 4(E),(M). The Urgency Ordinance also incorporates by reference portions of the previously challenged Sign Ordinance, such as § 15.32.070 B through K, which contain content-based restrictions and preferences for signs posted by favored businesses. Motion at 7:12–22, Urgency Ordinance § 7(G). The Urgency Ordinance provides for a detailed application process but does not require Defendant to grant or deny an application, and gives no recourse to an applicant who fails to receive a response. Motion at 7:22–8:1, Urgency Ordinance § 7(A). In order to appeal the denial of a permit, an applicant must pay a $250 appeal fee. Motion at 8:12–14, Urgency Ordinance § 12(A). The City Council may delay consideration of the appeal indefinitely if it decides that there is "good cause" to do so. Motion at 8:14–15, Urgency Ordinance § 12(A).

According to Plaintiffs, the New Ordinance also includes content-based restrictions without demonstrating why the content will have a negative impact on Defendant's interest. Motion at 9:8–10.

For example, the New Ordinance continues to regulate signs based on content. New Ordinance § 15.32.020. The New Ordinance incorporates a new provision which Plaintiffs challenge on First Amendment grounds in the FAC: a general prohibition of carrying signs "displaying a commercial message" on public property and in the public right-of-way, which Plaintiffs construe as limiting picketing, demonstrations and protests on all public land. Motion at 9:12–18, New Ordinance § 15.32.040(E).

In its opposition, Defendant argues first that the New Ordinance is the only operative ordinance for purposes of determining whether Defendant intends to continue to regulate signs in an unconstitutional manner.[7] Opp'n at 14:3–6. Defendant also argues that the New Ordinance indicates the City's intent to comply with the law. Opp'n at 14:12–14. According to Defendant, the New Ordinance demonstrates the City's "substantial interest in reducing pedestrian and vehicular traffic safety hazards and protecting and enhancing the city's aesthetic environment." Opp'n at 14:15–17, New Ordinance § 1. The New Ordinance also clarifies the sign application process, setting time limits for decisions regarding applications, hearing of appeals and issuing decisions on appeals. Opp'n at 15:1–9, New Ordinance §§ 15.32.080(D), 15.32.130(A).

Defendant also contends that distinguishing between on-site and off-site signs does not violate the Constitution, citing *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 512, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)(finding that a city could reasonably conclude that a commercial enterprise—as well as the public—has stronger interests in identifying its place of business and advertising its products than in using its space to advertise commercial enterprises located elsewhere) and *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 611–612 (9th Cir.1993) (the fact that cities have concluded that some commercial interests outweigh their municipal interests does not mean they must give similar weight to all commercial advertising). Further, Defendant argues that Plaintiffs have mischaracterized the New Ordinance, which limits handheld signs only when they display a "commercial message." Opp'n at 17:2–17, § 15.32.040(E). According to Defendant, its restrictions of certain types of signs are permissible in furtherance of its legitimate interests in traffic safety and aesthetics. Opp'n at 18:7–11, § 15.32.10(A)-(B), (G), (J).

The issue of the constitutionality of the Urgency Ordinance and the New Ordinance is not currently before the Court. However, evidence of the retention of previously challenged provisions of the Sign Ordinance and Plaintiffs' arguments concerning the unconstitutionality of various portions of both ordinances have not been sufficiently rebutted by Defendant. The Court therefore finds that Defendant has failed to meet its burden to demonstrate that the likelihood that it will continue to violate the First Amendment is sufficiently remote to meet the stringent test for mootness. *City of Mesquite*, 455 U.S. at 289 n. 10, 102 S.Ct. 1070. Dismissal of Plaintiffs' claims on the grounds of mootness is therefore not appropriate.

---

**7.** The Court is unpersuaded by Defendant's position that the only operative ordinance is the New Ordinance. At the time Defendant filed its opposition, the Urgency Ordinance, not the New Ordinance, was in effect. Thus, the Court must entertain Plaintiffs' constitutional challenges to both the Urgency Ordinance and the New Ordinance in making its determination concerning the likelihood of Defendant's continuing First Amendment violations.

**2. Plaintiffs' Claims for Damages Based on the Enforcement of Unconstitutional Regulations Cannot be Rendered Moot by the Passage of New Regulations**

■ The Supreme Court held in *City of Mesquite* that revisions to a challenged ordinance do not render a plaintiff's claim moot, as "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated." 455 U.S. at 289, 102 S.Ct. 1070. Where a defendant city does not establish that the likelihood of further violations is sufficiently remote to dismiss a plaintiff's claims, those claims should be decided on the merits, even in the face of a new regulation. *Id.* "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* at n. 10, 102 S.Ct. 1070, *citing United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). While a case might become moot under circumstances in which it was absolutely clear that the allegedly wrongful behavior would not recur, the burden is with the alleged wrong-doer to demonstrate that the likelihood of additional violations is sufficiently remote to render injunctive relief unnecessary. *See id.; see also Ft. Lauderdale I,* 934 F.2d at 286 (amendments to sign code do not render case moot where it was uncertain whether the defendant would return the sign code to its original form if it prevailed in the action); *Florida Outdoor Advertising, L.L.C. v. City of Boynton Beach,* 182 F.Supp.2d 1201, 1213 (S.D.Fl.2001) (where plaintiff filed permit applications under previously challenged sign code, the enactment of a new ordinance did not moot plaintiff's claims); *Wilton Manors Street Systems v. City of Wilton Manors,* 2000 WL 33912332, *6 (S.D.Fla.2000) (same).

Defendant contends that no legal purpose will be achieved by enjoining a superseded ordinance, citing *National Advertising Company v. City of Ft. Lauderdale,* CV No. 99–6750 (11th Cir., October 26, 1999) ("*Ft. Lauderdale II*"). Defendant's reliance on Ft. Lauderdale II is misplaced, as the fact that a constitutional ordinance had already been adopted at the time the plaintiff's permit application was denied distinguishes it factually from the instant case.

Defendant also attempts to analogize the instant case to *National Advertising Co. v. The City and County of Denver,* in which the court declined to grant the plaintiff injunctive relief, finding that "[a]t the time the district court held the claims moot, the new ordinance had been enacted and the old ordinance repealed." 912 F.2d 405, 412 (10th Cir.1990). In that case, plaintiffs submitted applications during a period in which the defendant was actively pursuing enactment of a new ordinance to replace its existing unconstitutional ordinance. *See id.* at 413. In fact, at the time the plaintiff submitted its applications, the old ordinance was not being enforced, and the defendant city had notified the plaintiff that its applications would be considered based on the proposed replacement ordinance. *See id.* Based on these facts, the appellate court affirmed the district court's holding that the plaintiff's claims were moot, finding that injunctive relief would be meaningless because of the repeal of the ordinance, and that plaintiff's knowledge at all relevant times of the imminent repeal of the unconstitutional ordinance and passage of a new ordinance defeated its damages claims. *See id.* at 412–13.

The primary distinction between Denver and the instant case, which Defendant fails to grasp, is that at the time the plaintiff in Denver filed its applications, it was aware that the defendant was in the process of

amending its sign regulations and that its old regulations were not in effect. In the instant case, Defendant did not begin the process of amending its regulations until after Plaintiffs filed suit challenging the constitutionality of the Sign Ordinance. In addition, in Denver, although the plaintiff would have been entitled to a permit under the prior ordinance, it was denied a permit under the new ordinance. The court found that even had plaintiff's application been approved based on the old ordinance, it would have been immediately rescinded at the time the new ordinance was enacted. 912 F.2d at 412. Therefore, declaratory relief was unavailable because plaintiff was not entitled to a permit under the new ordinance. *Id.* at 412–413. As discussed above, these facts are entirely dissimilar from the facts in the instant case, and Defendant's reliance on Denver is therefore misplaced.

The Court finds ample legal support for the position that the implementation of a new ordinance does not moot a plaintiff's claim under a prior ordinance. This Court therefore agrees with Plaintiffs that their claims for damages are not mooted by Defendant's adoption of the Urgency Ordinance or the New Ordinance.

**3. Plaintiffs Obtained Vested Rights to Post Signs at the Time the Applications Were Filed under the Sign Ordinance.**

Based on the law in existence at the time the permit applications were submitted, Plaintiffs have obtained vested rights to post signs. *See e.g. Boynton Beach*, 182 F.Supp.2d at 1213 (where plaintiff filed permit applications under challenged sign code, plaintiff had obtained vested rights); *Wilton Manors*, 2000 WL 33912332 at *6 (where no valid ordinance existed at the time the plaintiff filed its permit applications, the court found that plaintiff's rights had vested).

In *Ft. Lauderdale II* the court rejected the defendant city's argument that the plaintiff acquired no vested rights to the permits or their use because plaintiff could not demonstrate reliance on the law prior to adoption of a constitutional ordinance. *See slip op.* at 7. Similar to *Fort Lauderdale II*, in the instant case, at the time Sussman submitted his applications, a "legal vacuum" existed: the Sign Ordinance was invalid and no new ordinance had been publicly proposed. Following the reasoning of *Ft. Lauderdale II*, this Court finds that Plaintiffs need not show reliance on the Sign Ordinance in order for their rights to vest, because Defendant's wrongful conduct has denied Plaintiffs the opportunity to rely. *Id.* at 7–8.

In its Opposition, Defendant argues that Plaintiffs never had vested rights because Plaintiffs never submitted a completed application to Defendant. Opp'n at 3:2–4. In support of this position, Defendant claims that Sussman's applications were returned because they were "incomplete" and that this rejection of the applications did not constitute a denial, citing Defendant's rejection letter. Opp'n at 3:16–17. The Court finds Defendant's argument specious. The rejection letter indicates that the applications could not be processed because the proposed signs were "not permitted." Defendant's contention that the applications were not denied is disingenuous and in conflict with the content of the letter itself, which on its face denies Plaintiffs' application and contains no reference to the applications being "incomplete."

Defendant also attempts to distinguish the instant case from those cited by Plaintiffs, where the courts found that the plaintiffs' rights had vested upon denial of their permit applications in the absence of a valid regulation. Defendant states that "while the Sussman Application was sub-

mitted when an arguably unconstitutional sign ordinance existed, a second and unchallenged Ordinance was in effect." Opp'n at 6:11–12. Defendant's argument is completely without factual support. Ordinance No. 644, the "valid" ordinance to which Defendant refers, amends certain sections of the Sign Ordinance but cannot be construed as an independent regulation.

The Court is unpersuaded by Defendant's arguments. Plaintiffs *have* challenged the constitutionality of the Sign Ordinance, and Defendant has failed to demonstrate that an ordinance independent of the Sign Ordinance was in place at the time the applications were filed, thus creating a "legal vacuum." Defendant has also provided no support for the position that Plaintiffs' applications were not denied but were rejected because they were "incomplete." The Court finds that Plaintiffs' rights vested under the Sign Ordinance at the time the permit applications were filed and that their claims are therefore not moot.

## B. INJUNCTIVE RELIEF

### 1. Standard for a Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must show "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir.1999). "These two alternatives represent extremes of a single continuum, rather than two separate tests." *Id.* (internal quotations omitted). "Thus, the greater the relative hardship to [a plaintiff], the less probability of success must be shown." *Id.*

### 2. Whether State or Federal Law Applies

Plaintiffs have brought suit under both the First Amendment to the United States Constitution and the similar provisions of the California Constitution.[8] The Ninth Circuit follows the doctrine that federal courts "should avoid adjudication of federal constitutional claims when alternative state grounds are available." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391–92 (9th Cir.1994). "Where the state constitutional provisions offer more expansive protection than the federal constitution, [the Court] must address the state constitutional claims in order to avoid unnecessary consideration of the federal constitutional claims." *Id.* at 1392. Thus, "[i]f the California Constitution provides 'independent support' for [Plaintiffs'] claims, then 'there is no need for decision of the federal [constitutional] issue.'" *Carreras v. City of Anaheim*, 768 F.2d 1039, 1042–43 (9th Cir.1985)(quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 294–95, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)) (applying California law).

The California Constitution provides, in pertinent part: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2; *compare* U.S. Const. amend. 1 ("Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."). "The California Constitution, and California cases construing it, accords greater protection to the expression of free speech than does the United States Constitution." *Gonzales v. Superior Court (City*

---

**8.** Curiously, Plaintiffs' brief cites Georgia case law, not California case law. Plaintiffs' counsel is admonished to cite to relevant California cases in future briefing.

*of Santa Paula),* 180 Cal.App.3d 1116, 1122, 226 Cal.Rptr. 164 (1986) (citing *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 903, 907–10, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), among others). · The state constitutional provisions are more protective and inclusive of the rights to free speech and press than the federal counterpart. *Id.* at ·1123, 226 Cal.Rptr. 164.

While the free speech provisions differ, California courts draw upon both state and federal law for their state constitutional analyses. *See U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Lab.,* 154 Cal.App.3d 1157, 1163, 201 Cal.Rptr. 837 (1984); *Gonzales,* 180 Cal.App.3d at 1123, 226 Cal.Rptr. 164 (federal law provides guidance). "Federal principles are relevant but not conclusive so long as federal rights are protected." *Robins,* 23 Cal.3d at 909, 153 Cal.Rptr. 854, 592 P.2d 341. "[W]here state law affords greater protection to expression of free speech than federal law, state law prevails." *Gonzales,* 180 Cal.App.3d at 1122, 226 Cal.Rptr. 164. These principles will guide the Court in its analysis of Plaintiffs' constitutional challenges.

### 3. Whether Plaintiffs Have Standing

As a threshold matter, Defendant contends that Plaintiffs do not have standing to challenge the Sign Ordinance because Plaintiffs have not complied with California Business & Professions Code § 5405 and because Plaintiffs' permit applications were denied on this basis.[9] The Court disagrees and concludes that Plaintiffs have standing to bring this challenge.

Article III standing contains three elements: (1) "an injury in fact"; (2) "a caus-

al connection between the injury and the conduct complained of"; and (3) likelihood that the injury will be " 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The first element of the standing inquiry—the injury in fact—is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent, not conjectural' or 'hypothetical.' " *Id.* at 560, 112 S.Ct. 2130 (citations omitted). A plaintiff must show that " 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.' " *4805 Convoy, Inc. v. City of San Diego,* 183 F.3d 1108, 1111–12 (9th Cir.1999) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). "Thus, a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " *Id.* at 1112 (quoting *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (*"Munson"*)).

When a case concerns a challenge that a statute or ordinance is, on its face, unconstitutional, particularly in the First Amendment context, the type of facial challenge at issue affects the standing analysis. While a plaintiff must still demonstrate an injury in fact, a plaintiff may in some circumstances assert not just his own constitutional rights, but also the constitutional rights of others. *Id.*

A statute may be facially unconstitutional if (1) " 'it is unconstitutional in every conceivable application' " or (2) " 'it seeks

---

9. Defendant also argued in its motion to dismiss for lack of standing, filed August 5, 2002, that Horizon did not have standing because (1) the permit applications and the complaint were filed before Horizon's formation and (2)

Sussman, not Horizon, filed the permit applications. This Court has already stricken Defendant's motion as moot, based on the addition of Sussman as a named Plaintiff in the First Amended Complaint.

to prohibit such a broad range of protected conduct that it is unconstitutionally over-broad.' " *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir.1998) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).[10] The first type of facial challenge involves a plaintiff who argues that the statute "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." *Id.* In such a case, courts apply the general rule that a plaintiff has standing only to vindicate his own constitutional rights, rights that have been, or are in imminent danger of, being invaded by the government's implementation or enforcement of that statute. *See id.; cf. FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 220–21, 237, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("There can be little question that the motel owners have 'a live controversy' against enforcement of [a] statute" that regulates adult motels and other "sexually oriented businesses").

However, an exception to the traditional standing rule applies in the First Amendment context when a plaintiff raises the second type of facial challenge. *Foti*, 146 F.3d at 635. In this type of challenge, "the plaintiff argues that the statute is written so broadly that it may inhibit the constitutionally protected speech of third parties." *Id.; accord Munson*, 467 U.S. at 956–57, 104 S.Ct. 2839. In such a case, the general limitation on standing is relaxed because there exists "a danger of chilling free speech" in society as a whole. *Munson*, 467 U.S. at 956–57, 104 S.Ct. 2839. Thus, so long as a plaintiff himself satisfies the injury in fact requirement, he has standing to argue that a law is facially overbroad as it relates to the expressive activities of others, whether or not he also challenges the law's overbreadth as it relates to his own expressive activities. *See id.* (a for-profit professional fundraiser who contracts with charitable organizations has standing to challenge a statute that prohibits charitable organizations from paying or agreeing to pay as expenses more than 25 percent of the amount raised in connection with any fundraising activity); *see also S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1142–43 (plaintiff, whose First Amendment activities are directly impacted by the new ordinance, has standing to challenge the impact of the overbroad ordinance on behalf of itself and others not before the court), *amended on other grounds*, 160 F.3d 541 (9th Cir.1998). The "prior restraint" cases, where one who is subject to the law alleges that a licensing statute vests unbridled discretion in the decision-maker over whether to permit or deny the expressive activity, fall into this category. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (discussing cases where a plaintiff has standing to bring facial overbreadth challenges, including prior restraint and unreasonable time, place and manner claims, "not because his own rights have been violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"); *see also Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it dele-

10. "A successful challenge to the facial constitutionality of a law invalidates the law itself." *Foti*, 146 F.3d at 635; *accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("A 'facial' challenge ... means a claim that the law is 'invalid in toto—and therefore incapable of any valid application' ") (quoting *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

gates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license"); *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (same).

Here, both types of facial challenges are at issue. Plaintiffs first contend that the Sign Ordinance violates *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). A challenge to regulation of commercial speech is "substantially similar" to a challenge of time, place, and manner restrictions, *Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), as "unconstitutional in every conceivable application." *Foti,* 146 F.3d at 635. With regard to this challenge, Plaintiffs may have standing only with regard to their own constitutional injury. *See Central Hudson,* 447 U.S. at 565, 100 S.Ct. 2343 n. 8 ("This analysis is not an application of the 'overbreadth' doctrine."). Plaintiffs also contend that the Sign Ordinance is unconstitutionally overbroad. *See* FAC ¶ 37 ("The Sign Ordinance … restrict[s] and prohibit[s] far more speech than could ever be justified by legitimate governmental objectives."). With regard to the challenge under *Freedman,* for example, Plaintiffs also have standing to assert the interests of third parties.

Plaintiffs have demonstrated the requisite injury in fact. Sussman signed leases with two landowners in the City of Industry allowing Plaintiffs to post signs on the properties. *See* Decl. of Adam Sussman ¶ 4. Plaintiffs then submitted two applications to the City for permits to post signs. *See id.* at ¶ 7. Those applications were denied on April 19, 2002. *See* Decl. of Anthony R. Taylor Ex. G. The parties dispute the meaning of the denial letter, which states:

> Your applications for sign approvals at 17008 Evergreen Place and 17050 Evergreen Place cannot be processed and are enclosed. The proposed signs are not permitted in the City of Industry. A copy of the sign code is enclosed.

*Id.* Defendant focuses on the first sentence of the letter, contending that the applications were not denied, but rather could not be processed because Plaintiffs did not comply with California Business & Professions Code § 5405(e), as required by Section 15.32.030 of the Sign Ordinance, and that the applications were therefore "incomplete." *See* Opp'n at 1:18–28.[11] Nothing in the letter says that the applications could not be processed because of a failure to comply with § 5405(e).

Plaintiffs applied for permits, were not granted permits, and are not allowed to install their displays. Because "the ordinance flatly prohibit[s] [Plaintiffs'] off-site signs," reapplying for a permit after obtaining a state permit would be futile. *Desert Outdoor Advertising, Inc. v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir.1996).[12] Accordingly, Plaintiffs have established an injury in fact. For these reasons, the Court finds that Plaintiffs have standing to challenge the Sign Ordinance.

### 4. Whether the Sign Ordinance Violates Central Hudson

■ "The First Amendment … protects commercial speech from unwarranted

---

11. The Court notes that Defendant has not submitted a declaration from a knowledgeable person in support of this argument.

12. In *Desert Outdoor,* the fact that the ordinance prohibited the proposed signs was sufficient to establish standing even though the plaintiffs had not yet applied for permits. *See* 103 F.3d at 818.

governmental regulation." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (citing *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761–62, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)). The Supreme Court, in *Central Hudson*, established a four-part test for analyzing governmental restrictions on commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment .... Next we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. 2343. The City has the burden of establishing that the Sign Ordinance meets all the elements of the *Central Hudson* test with regard to the ban on off-site advertising displays. *See Desert Outdoor*, 103 F.3d at 819. The parties do not dispute that Plaintiffs' proposed signs are protected by the First Amendment (*e.g.*, Plaintiffs are not seeking to advertise an unlawful product). The Court now turns to the remaining elements and concludes that the City has not borne its burden.

Defendant has submitted a declaration from the City Planning Director, Mike Kissel, who asserts that the Sign Ordinance was adopted to reduce and prevent "visual blight" and address "a safety concern for motorists, whom [sic], in my experience were increasingly likely to become distracted by having their attention lured away from the roadway to view the overabundance of signs." Decl. of Mike Kessel ¶¶ 3–4. But "the City has not shown that it enacted its ordinance to further any interest in aesthetics and safety." *Desert Outdoor*, 103 F.3d at 819. For example,

"[t]he ordinance lacks any statement of purpose concerning those interests." *Id.* (citing *National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 555–56 (2nd Cir.1990) (invalidating ordinance containing no statement of purpose)); *Adams Outdoor Advertising of Atlanta, Inc. v. Fulton County, Georgia*, 738 F.Supp. 1431, 1433 (N.D.Ga.1990); *see also Southlake Property Associates, Ltd. v. City of Morrow, Georgia*, 112 F.3d 1114, 1116 n. 3 (11th Cir.1997). Additionally, although Mr. Kissel states that he "personally worked with the City Council in advising them of these regulations," Kissel Decl. ¶ 4, Defendant has not submitted any declarations from City Council members who actually voted to adopt the Sign Ordinance or with legislative history, such as transcripts of the Council deliberations, that might provide the Court with some indication of the original intent. *Cf. N.W. Enterprises, Inc. v. City of Houston*, 27 F.Supp.2d 754, 854 (S.D.Tex.1998) (considering minutes and transcripts of committee meeting).

However, the Supreme Court has indicated that the "insufficiency of the original motivation does not diminish other interests that the restriction may now serve." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). While Defendant's showing of both its original intent and current purpose—only the declaration of Mr. Kissel—is weak, the City has at least identified interests in aesthetics and safety that elsewhere have been found to be "substantial." *See Desert Outdoor*, 103 F.3d at 819. Accordingly, the Court will deem the second prong of the *Central Hudson* test met, though just barely.

However, "the City provided no evidence that the ordinance promotes those interests." *Id.* Mr. Kissel's declaration asserts that "[o]ff-premises signs ... were prohibited to ... promote the City's inter-

ests in health, safety, welfare and aesthetics ...." Kissel Decl. ¶ 4. But neither Mr. Kissel nor Defendant cite to any reports or studies or other evidence indicating that the ban actually serves those interests. For example, the City has not presented any statistics indicating that the number of accidents on the stretch of Interstate 60 in the City has declined along with the number of billboards along that route.[13] *Cf. Edenfield v. Fane*, 507 U.S. 761, 770–71, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) ("This burden is not satisfied by mere speculation or conjecture ...."). Accordingly, the City has not met its burden on the third prong of *Central Hudson*, that the Sign Ordinance directly advances the City's interests.

The Court must "review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy." *Central Hudson*, 447 U.S. at 566 n. 9, 100 S.Ct. 2343. Despite this admonition against broad speech restrictions to promote interests like aesthetics and safety, Defendant has not even attempted to address the remaining element of the *Central Hudson* test, that the Sign Ordinance is no more restrictive than necessary, which is the "critical inquiry." *Id.* at 569, 100 S.Ct. 2343. The Court finds that the Sign Ordinance restricts far more speech than necessary. In the context of off-site advertising displays alone, the Sign Ordinance bans all new signs regardless of their size, their location, or the number of other signs in the vicinity. That is, the Sign Ordinance bans all off-site signs regardless of whether a new sign would cause visual blight or create a safety hazard. Additionally, the Court agrees with Plaintiffs that by banning all signs not specifically authorized by the Sign Ordinance, the regulation effec-

tively reverses the proper mechanism. Defendant has not attempted to show, for example, that its interests could not be served by a scheme that merely prohibited particular signs in particular areas. "The broad sweep" of the Sign Ordinance indicates that the City "did not 'carefully calculat[e] the costs and benefits associated with the burden on speech imposed' by the regulations." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)) (alteration in original).

Defendant presents two irrelevant arguments with regard to *Central Hudson* that the Court can dispense with quickly. First, Defendant contends that there is no evidence that any individuals have been denied permits to install reasonable signs. Defendant is wrong; Plaintiffs were denied a permit. It is irrelevant whether the proposed signs were "reasonable," because this is a facial, not an as-applied challenge. *Cf. Mardi Gras of San Luis Obispo v. City of San Luis Obispo*, 189 F.Supp.2d 1018, 1033 n. 15 ("Facial attacks ... are not dependent on the facts surrounding any particular permit decision."). Second, Defendant contends that the Sign Ordinance can be justified because it applies to all areas of the City (which has no residential zoning) equally. However, the fact that the City of Industry is almost entirely commercial counsels in favor of applying *Central Hudson* strictly. There are few, if any, countervailing interests of the City's residential population to be considered. *Cf. Lorillard*, 533 U.S. at 564–65, 121 S.Ct. 2404 ("If some retailers have relatively small advertising budgets, and use few avenues of communications, then the Attorney General's outdoor advertising regu-

---

**13.** The Court provides this example for the parties' benefit. The Court does not intend to suggest that this particular study would be either necessary or sufficient to support the Sign Ordinance.

lations potentially place a greater, not lesser, burden on those retailers' speech.").

Both because Defendant has not even attempted to meet its burden under *Central Hudson* and because the Court finds that the Ordinance restricts more speech than necessary, the Court finds that Plaintiffs have established a substantial likelihood of success on this claim.

### 5. Whether the Sign Ordinance Has Adequate Safeguards

■ Government regulations that restrict commercial speech must provide adequate safeguards to limit the potential infringement on First Amendment rights. *See, e.g., Freedman v. Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *Freedman* required, in the context of government censorship of films, that:

the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution . . . . [T]he procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

*Id.* at 59, 85 S.Ct. 734. The Ninth Circuit has held that the "burden-of-instituting-proceedings safeguard" does not apply to licensing schemes. *See Baby Tam & Co., Inc. v. City of Las Vegas,* 247 F.3d 1003, 1008 (9th Cir.2001) (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 228–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). Nevertheless, the licensing scheme must provide some safeguards, such as guaranteeing the prompt issuance of a license and a prompt judicial hearing. *See id.* at 1006–07; *Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100–01 (9th Cir. 1998) [hereinafter *Baby Tam I*]; *see also North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755, 777–78 (N.D.Ohio 2000) (applying *Freedman* to a sign ordinance).

The City of Industry Sign Ordinance provides no safeguards. It does not set a deadline by which the City must act after a party submits an application for a permit. It does not provide for an appeals process after a permit is denied. And it does not make provisions for what will happen if the City fails to respond to a permit application promptly. The entire permit scheme is, therefore, facially unconstitutional.[14] *Cf. Baby Tam I,* 154 F.3d at 1102 ("We hold that because the City's ordinance fails to provide for a prompt hearing and prompt decision by a judicial officer, it fails to provide for prompt judicial review and violates the First and Fourteenth Amendments."); *Burbridge v. Sampson,* 74 F.Supp.2d 940, 953 (C.D.Cal.1999) ("[T]he 'approval and denial' provisions[ ] are facially unconstitutional. They fail to provide for prompt judicial review . . . . [They] fail[ ] to provide a time limit within which to deny or approve of postings or distribution of literature."); *cf. also Café Erotica/We Dare to Bare/Adult Toys/Great Food/Exit 94, Inc. v. St. Johns County,* 143 F.Supp.2d 1331, 1335 (M.D.Fla.2001); *North Olmsted Chamber of Commerce,* 86 F.Supp.2d at 778. Plaintiffs have demonstrated a substantial likelihood of success on its *Freedman* claim.

### 6. Whether Plaintiffs Have Demonstrated Irreparable Harm

■ Because the Sign Ordinance is facially unconstitutional for lack of necessary

---

**14.** Defendant's reliance on the Supreme Court's recent decision in *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002), is inexplicable. The ordinance at issue in *Thomas* included the necessary *Freedman* safeguards. *See id.* at 777–78.

safeguards, Plaintiffs' likelihood of success is virtually guaranteed. Accordingly, a preliminary injunction enjoining enforcement of the statute will be granted if Plaintiffs also show the possibility of irreparable harm if relief is not granted. It appears to the Court that Plaintiffs have shown the possibility of irreparable harm. "The loss of First Amendment [and state constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir.), *amended on other grounds*, 160 F.3d 541 (9th Cir.1998).

Because of the strength of Plaintiffs' showing of likelihood of success on the merits, the Court need not apply the alternative, "balance of the hardships," test. If it were to do so, however, the Court would find that the balance of the hardships tips sharply in Plaintiffs' favor. Defendant's fear that the City of Industry will become "Billboard Sign City," Kissell Decl. ¶¶ 6–7, cannot justify disregard for the First Amendment rights of commercial speakers. *Cf. Café Erotica*, 143 F.Supp.2d at 1336 ("St. Johns County may amend its sign ordinance to comply with the *FW/PBS* and *Freedman* standards, while those wishing to erect signs have no means by which to ensure that their First Amendment rights are not indefinitely suppressed.").

## 7. Whether the Unconstitutional Provisions of the Sign Ordinance are Severable

■ Defendant asks that the Court sever any unconstitutional provisions of the Sign Ordinance from the rest of the regulation. Severability of a state regulation is a matter of state law. *Leavitt v. Jane L.*, 518 U.S. 137, 138, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). Under California law, three criteria exist for severability: "the invalid provision must be grammatically, functionally, and volitionally separable."

*Legislature of the State of Cal. v. Eu*, 54 Cal.3d 492, 535, 286 Cal.Rptr. 283, 816 P.2d 1309 (1991) [hereinafter *Legislature of Cal.*]. That is, the provisions must be "grammatically severed without affecting the operation of the remaining" provision. *Id.* Second, severance must "not affect the function or operation of the remaining provisions." *Id.* And, finally, the Court must find that the drafters of the Sign Ordinance "would have adopted the remaining provisions had they foreseen the success of [Plaintiffs'] challenge." *Id.* "Severance of particular provisions is permissible despite the absence of a formal severance clause." *Id.* at 534–35, 286 Cal.Rptr. 283, 816 P.2d 1309.

It is possible that the off-site display prohibition might be severable. The Court need not address this issue, because of the facially unconstitutional permit scheme. The Sign Ordinance is not functional without a permit scheme. Accordingly, the Court must enjoin the entire Sign Ordinance.

## 8. Plaintiffs' Other Grounds for Relief

Plaintiffs present a number of other grounds for enjoining the Sign Ordinance, including that the regulation favors commercial over noncommercial speech, Motion at 17–18; that the regulation grants City officials impermissible discretion, Motion at 23–24; that the ordinance unduly burdens fundamental methods of communication, Motion at 24–25; and that the regulation violates the Equal Protection Clause of the Fourteenth Amendment, Motion at 25–27. Because the Court finds that the permit scheme is facially unconstitutional and the Sign Ordinance must be enjoined in its entirety, the Court need not address these other contentions. *Cf. Central Hudson*, 447 U.S. at 571 n. 14, 100 S.Ct. 2343. However, the Court notes that, to the extent that Defendant has failed to

provide argument in opposition to any of these grounds for relief, it may be found to have conceded the merits of Plaintiffs' position. Additionally, Plaintiffs' arguments appear, upon the Court's brief review of them, to have merit.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have established that their claims under the Sign Ordinance are not moot. Accordingly, the Court hereby GRANTS Plaintiffs' Motion in Response to Defendant's Suggestion of Mootness.

Having resolved the issues of standing and mootness in Plaintiffs' favor, the Court finds it appropriate to issue a ruling on Plaintiffs' Motion for a Preliminary Injunction at this time. For the reasons stated above, the Court finds that Plaintiffs have established a substantial likelihood of success in demonstrating the facial unconstitutionality of the Sign Ordinance and have demonstrated a possibility of irreparable harm. Accordingly, the Court hereby GRANTS Plaintiffs' Motion for a Preliminary Injunction. Defendant is hereby PROHIBITED, RESTRAINED, and ENJOINED from enforcing the original Sign Ordinance, in its entirety.