**COVENANT MEDIA OF CALIFORNIA, L.L.C. Plaintiff,**

v.

**CITY OF HUNTINGTON PARK, CALIFORNIA Defendant.**

**No. CV052885MMMCWX.**

United States District Court, C.D. California.

July 18, 2005.

Counsel for Plaintiff Covenant Media of California, L.L.C.: Brian C. Shapiro, Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, CA, E. Adam Webb, The Webb Law Group, L.L.C., Atlanta GA.

Counsel for Defendant City of Huntington Park, California. H. Francisco Leal, Huntington Park City Attorney, and Timothy M. Hoffman, Leal and Dominguez, Los Angeles, CA Randal R. Morrison, Sabine and Morrison, San Diego, CA.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

MORROW, District Judge.

On April 19, 2005, Covenant Media of California, L.L.C. filed this action against the City of Huntington Park, California, challenging the City's rejection of Covenant's applications to display advertising signs. Covenant contends that the City's sign regulation, codified at Title 9, Chapter 3, Article 9, § 9–3.1201, et seq. (the "Prior Sign Ordinance") is unconstitutional under the First and Fourteenth Amendments to the United States Constitution and Article 1, section 2 of the California Constitution. Covenant seeks (1) a preliminary and permanent injunction against enforcement of defendant's sign restrictions; (2) an order directing defendant to permit plaintiff to display the signs that were the subject of its applications; (3) an order directing defendant to provide the necessary certification to the State of California; (4) actual, consequential, presumed, and general damages; (5) attorneys' fees and costs of bringing suit; and (6) such other and further relief as the court deems just and equitable.

■ By this motion, Covenant "requests that the Court enter an order preliminary enjoining enforcement of the [Prior] Sign Ordinance."[1] After the date Covenant filed the motion, the City repealed the Prior Sign Ordnance and enacted Ordinance 754–NS as "an urgency measure" effective June 20, 2005 (the "Current Sign Ordinance"). The Current Sign Ordinance is codified at Title 9, Chapter 3, Article 12. The City contends that its repeal of the Prior Sign Ordinance renders Covenant's motion for preliminary injunction moot. It also asserts that "[t]he Court should seriously consider *sua sponte* dismissal for mootness and/or lack of standing."[2]

---

[1] Notice Of Motion And Motion For Preliminary Injunction at 2.

[2] Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction ("Def.'s Opp.") at 1. Because "standing is determined as of the commencement of suit" (see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)), and is conceptually distinct from post-commencement mootness, it appears the proper doctrine under which to consider dismissal of this action is mootness. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (distinguishing the Court's case law on standing from its case law on post-commencement mootness). This is particularly true since the City's challenge to plaintiff's standing is based on a misreading of Covenant's complaint. The City contends that Covenant "fails to assert ... that Plaintiff formally submitted any sign application(s) at all, and makes no claim that any such application was actually denied." (Def.'s Opp. at 17.) In fact, the complaint pleads, *inter alia*, that "[o]n or about February 2, 2005, pursuant to the City's sign regulations, Covenant submitted 14 completed application packages seeking to post signs at various locations throughout the City." (Complaint, ¶ 14.) It further alleges that Eric K. Garcia, Assistant City Planner, denied one of the applications and refused to process the remaining applications. (*Id.*) Moreover, in an analogous context, the Supreme Court has allowed the operator of an adult bookstore to pursue a constitutional challenge to a zoning ordinance despite the fact that "[i]nstead of applying for an adult business license, [plaintiff] brought th[e] lawsuit attacking Littleton's ordinance as unconstitutional on its face." *City of Littleton, Colorado v. Z.J. Gifts D–4, LLC*, 541 U.S. 774, 777, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004); see also *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license"); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 437 (6th Cir.2005) (quoting *Lakewood* and holding that "[f]or purposes of determining Goose Island's standing on this claim, it is irrelevant that the city did not actually deny

## I. FACTUAL BACKGROUND

Covenant posts and operates advertising signs.[3] It alleges that the City "has denied at least one sign application [that it has] submitted," and that the City "has rejected and refused to fully process 13 additional applications...."[4] Specifically, Covenant asserts that "Eric K. Garcia, Assistant City Planner, denied [its] application [for a sign permit at 5932 Pacific Boulevard] verbally by stating that billboards were prohibited in the City of Huntington Park," and that he refused to process Covenant's remaining applications for the same reason.[5]

Covenant asserts that the Prior Sign Ordinance, which was in force at the time Garcia allegedly rejected and/or refused to process its applications, makes a impermissible content-based distinction between on-

Goose Island's request to change its sign but only delayed consideration of the request").

In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Supreme Court held that a plaintiff with a commercial interest in speech can challenge the facial validity of a statute to which it is subject on the ground that the statute is so overbroad that it infringes the First Amendment interests of individuals who are not before the court. *Id.* at 504, n. 11, 101 S.Ct. 2882; see also *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798–99, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) ("The Court has repeatedly held that [an overbroad] statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it"). Under the Supreme Court's "overbreadth" doctrine, a "plaintiff [who has suffered an injury in fact] can challenge a statute on the ground that it is unconstitutional as applied to someone else, even if his own conduct is not protected under the First Amendment." *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir.1999). Under Ninth Circuit authority, however, the "injury-in-fact" requirement means that a plaintiff has overbreadth standing to challenge only a provision to which it is subject or which may indirectly injure its business. See *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 610–11 (9th Cir.2005) (holding that an attorney, who did not allege hat he had suffered any First Amendment harm, nonetheless had overbreadth standing to challenge the *pro hac vice* admission requirements for out-of-state attorneys and the standards for admission to the Arizona State Bar as violative of Arizonans' right to consult with out-of-state counsel because he asserted the rules had caused him financial injury); *Clark v. City of Lakewood*, 259 F.3d 996, 1010–11 (9th Cir.2001) (holding that the owner of an adult entertainment establishment had overbreadth standing to pursue a First Amendment challenge against the provisions of an ordinance that required the employees of such establishments to obtain a license because the licensing scheme—although not directly applicable to the owner—threatened his business' viability); *4805 Convoy, supra*, 183 F.3d at 1112–13 (holding that the operator of a nude dancing establishment that already had a license could not demonstrate "injury-in-fact" caused by the lack of procedural safeguards in a licensing provision, and therefore could not challenge that portion of a city ordinance, although it could challenge the lack of procedural safeguards in provisions governing the revocation and suspension of licenses).

Accordingly, it appears that Covenant has standing to challenge those provisions of the City's sign ordinance that apply directly to it, and that it may bring an "overbreadth" challenge asserting that the ordinance infringes the First Amendment rights of others to the extent it can demonstrate that provisions of the ordinance not directly applicable to it either have caused or may cause it an injury in fact. See *Clark v. City of Lakewood*, 259 F.3d 996, 1008 (9th Cir.2001) ("A plaintiff may have standing to challenge some provisions of a law but not others"). Because the court determines that Covenant's application for preliminary injunction must be denied on other grounds, however, it need not examine in greater detail the question of Covenant's standing at this time.

3. Plaintiff's Memorandum Of Points And Authorities In Support Of Plaintiff's Motion For Preliminary Injunction ("Pl.'s Mem.") at 1.

4. Complaint, ¶ 5.

5. *Id.*, ¶ 14.

site and off-site signs. It contends that this distinction favors commercial over noncommercial speech by banning signs that convey messages unrelated to the parcel where they are located.[6] Because the Prior Sign Ordinance defines a " '[b]ill-board or off-site sign' " as "a sign [or] structure advertising an establishment, merchandise, service or entertainment, which is not sold, produced, manufactured or furnished at the property on which the sign is located," Covenant asserts that it effectively bans "virtually all noncommercial speech." [7] Covenant also complains that the Prior Sign Ordinance's limits on the content and timing of political signs discriminate against noncommercial speech.[8] It contends that such content-based regulation of non-commercial speech is subject to strict scrutiny, and that no compelling government interest supports the restrictions imposed. As respects the restrictions placed on commercial speech by the Prior Sign Ordinance. Covenant asserts that they are invalid under the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[9] It mounts various other challenges to the provisions of the Prior Sign Ordinance under which its applications were judged as well: (1) the fact that the ordinance does not include procedural safeguards, including a time limit on City consideration of sign permit applications; [10] (2) the fact that the ordinance does not provide narrow objective standards to guide officials' exercise of discretion in granting or denying permits; [11] and (3) the fact that the ordinance is impermissibly vague and violates due process.[12] In addition to challenging provisions of the ordinance that directly affected the City's consideration of its applications, Covenant also contends that the Prior Sign Ordinance unduly burdens citizens' ability to place signs on private residential property in nonbusiness districts.[13]

The City contends that all of these challenges are moot, because the Prior Sign Ordinance has been repealed and the Current Sign Ordinance enacted in its place. The Current Sign Ordinance differs from its predecessor in several respects.[14] Most significantly, it contains a provision concerning the "substitution of messages," that was the earlier ordinance lacked.[15] This provision states:

"Subject to the property owner's consent, a noncommercial message of any type may be substituted for any duly permitted or allowed commercial message or any duly permitted or allowed noncommercial message, provided the sign structure or mounting device is legal without consideration of message content. Substitution of message may

6. Pl.'s Mem. at 9.

7. *Id.* at 9–10 (quoting section 9–3.1203 of the Prior Sign Ordinance).

8. *Id.* at 10.

9. *Id.* at 21–24.

10. *Id.* at 11–16.

11. *Id.* at 16–20.

12. *Id.* at 24–25.

13. *Id.* at 20.

14. See Def.'s Opp., Exh. 2 (comparison of Prior Sign Ordinance and Current Sign Ordinance).

15. Defendants assert that, although the Prior Sign Ordinance lacked any "explicit 'message substitution' provision," it "has a long administrative practice of not regulating signs displaying purely noncommercial speech." (Def.'s Opp. at 14); Declaration of Mariano Aguirre ("Aguirre Decl."). ¶ 2 (stating that it has been City policy not to enforce restrictions on noncommercial signs on private property).

be made without any additional approval or permitting. This provision prevails over any more specific provision to the contrary within this Article. The purpose of this provision is to prevent any inadvertent favoring of commercial speech over noncommercial speech, or favoring of any particular noncommercial message over any other noncommercial message." [16]

The City contends that this provision, which permits the substitution of any noncommercial sign for a commercial or noncommercial sign that is legally on display, "completely validate[s] the City's new sign ordinance against all claims of 'favoring commercial speech' and 'content based regulation.'" [17] It also contends that the inclusion of a "message substitution" provision renders the Current Sign Ordinance content-neutral, and obviates the need for procedural safeguards. [18] As a result, the City asserts, Covenant's argument that the Prior Sign Ordinance lacked procedural safeguards is moot. [19]

Covenant contends that the Current Sign Ordinance is constitutionally infirm, [20]

and that it will expire shortly after the hearing on this motion. Because the Current Sign Ordinance was "declared an urgency measure," it took effect immediately upon its adoption on June 20, 2005, and is set to expire 45 days thereafter, unless it is extended pursuant to California Government Code § 65858. [21] Covenant appears to request that the court enjoin both the old and new ordinance on the basis that they are unconstitutional. [22]

## II. DISCUSSION

### A. Legal Standard Governing Preliminary Injunctive Relief

■ In deciding whether to issue a preliminary injunction, the court must consider: (1) the likelihood that the moving party will succeed on the merits of its claim; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships tips in favor of one party or the other; and in certain cases (4) whether the public interest will be advanced by granting preliminary relief. *Miller v. Califor-*

---

16. Def.'s Opp., Exh. 1, Current Sign Ordinance, § 9–3.1206(E).

17. *Id.* at 14.

18. Def.'s Opp. at 17.

19. The City notes that both the Current Sign Ordinance and its predecessor ban new billboards, although the Current Sign Ordinance does so more directly. The Prior Sign Ordinance effected a ban on new billboards by prohibiting "[o]ff-site signs not specifically permitted by the provisions of this Chapter, including billboards." (See Pl.'s Mem., Exh. C, Prior Sign Ordinance, § 9–3.1208.) The Current Sign Ordinance explicitly bans "the construction, erection or use of any billboards, other than those which legally exist in the City, or for which a valid permit has been issued and has not expired, as of the date on which this provision is first adopted." (Def.'s Opp., Exh. 1, Current Sign Ordinance, § 9–3.1206(G).) Covenant does not address the new billboard ban in either its moving papers

or reply, and the court does not consider it further as a result. See *Ackerley of the Northwest v. Krochalis,* 108 F.3d 1095, 1099–1100 (9th Cir.1997).

20. Reply To Defendant's Opposition To Plaintiff's Motion For Preliminary Injunction ("Pl.'s Reply") at 12–19.

21. See Def.'s Opp., Exh. 1 at 4.

22. Covenant asserts that both the "[Prior] Sign Ordinance and [the Current Sign Ordinance] contain several grave constitutional deficiencies" and that "the court should immediately issue an injunction" that "provide[s] the City with the direction it obviously needs." (Pl.'s Reply at 2); see also *id.* at 23 ("[W]hether or not the temporary ordinance is made permanent, the City will be enforcing unconstitutional regulations unless this Court takes action").

*nia Pacific Medical Center,* 19 F.3d 449, 456 (9th Cir.1994); see also *Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir.2005); *Mayweathers v. Newland,* 258 F.3d 930, 938 (9th Cir.2001).

■ The court may issue a preliminary injunction if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, a demonstration that there is at least a fair chance the movant will prevail, and a balance of hardships that tips sharply in the movant's favor. *Save Our Sonoran, supra,* 408 F.3d at 1120; *Textile Unlimited, Inc. v. A.BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001); *Miller, supra,* 19 F.3d at 456. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Miller, supra,* 19 F.3d at 456; see also *Save Our Sonoran, supra,* 408 F.3d at 1120; *Tillamook County v. U.S. Army Corps of Engineers,* 288 F.3d 1140, 1143 (9th Cir.2002) ("These are not alternative tests but, instead, are extremes of a single continuum").

### B. Legal Standard Governing Mootness Of A Request For Injunctive Relief

■ Voluntary cessation of unlawful conduct does not moot a request for injunctive relief if the unlawful conduct may recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. TOC), Inc.,* 528 U.S. 167, 174, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case"). In fact, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to

recur." *Id.* at 190, 120 S.Ct. 693. Cessation of illegal conduct does, however, "render a controversy moot where there is no reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the alleged violation." *Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir.1988); see *Polo Fashions. Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir.1986) (explaining that the cessation of unlawful conduct moots a request for injunctive relief where " 'the reform of the defendant [is] irrefutably demonstrated and total,' " quoting 2 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 30:6 at 471 (2d ed.1984); *American Board of Psychiatry & Neurology v. Johnson–Powell,* 129 F.3d 1, 5 (1st Cir.1997). ("[V]oluntary reform will always suffice to prevent injunctive relief only if it is irrefutably demonstrated, total reform" (internal quotation marks and citation omitted)).

■ Because the repeal of a statute generally demonstrates irrefutably that enforcement of the statute will not resume, "[t]he complete repeal of a challenged statute naturally renders a request for an injunction against application of that statute moot." *Rembert v. Sheahan,* 62 F.3d 937, 940 (7th Cir.1995); see *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1510 (9th Cir.1994) ("A statutory change ... is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed. As a general rule, if a challenged law is repealed or expires, the case becomes moot"); see generally *Smith v. University of Washington Law School,* 233 F.3d 1188, 1193 (9th Cir.2000) (holding that the enactment of a state law barring Washington state institutions from maintaining race-based affirmative action programs "made it unnecessary to enjoin the Law School from operating a preferential

program, and made it equally unnecessary to declare that it could not do so. Moreover, there was no need to continue with a class action for that purpose. In a word, that part of the controversy had become moot").

There are limited circumstances, however, in which an action to enjoin an ordinance may not be mooted by repeal of the ordinance. In *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), the Supreme Court found that the repeal of challenged language in a licensing ordinance did not render moot the city's appeal of a decision striking down the ordinance, since the repeal did not preclude the city "from reenacting precisely the same provision if the District Court's judgment were vacated." *Id.* at 289, 102 S.Ct. 1070. In fact, the Court noted, the city had announced its intention of doing precisely that. *Id.* at 289, n. 11, 102 S.Ct. 1070; see also *id.* at 296, n. 1, 102 S.Ct. 1070 (White, J. concurring in part and dissenting in part) (explaining that the case would be moot, but for the city's intention to reenact the ordinance).

Circuit courts have interpreted the *Aladdin's Castle* mootness exception narrowly, and have applied it only where there is "evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute." *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223–24 (10th Cir.2001) (collecting cases); *Brandywine, Inc. v. City of Rich-mond*, 359 F.3d 830, 836 (6th Cir.2004) ("Critical to the holding in [*Aladdin's Castle* ] was the fact that legislators had publicly expressed an intention to re-enact the offending legislation. No such threat was made in this case, so the passage of the August amendment to the Development Ordinance provides sufficient assurance that the April amendment will not be re-enacted. Therefore, plaintiffs' claims for declaratory and injunctive relief were properly dismissed as moot" (internal citation omitted)); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir.2000) ("Based on our review of the post-*Mesquite* caselaw ... we are convinced that *Mesquite* is generally limited to the circumstance, and like circumstances, in which a defendant openly announces its intention to reenact precisely the same provision held unconstitutional below. In other words, we remain satisfied that statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed" (internal quotation marks and citations omitted))[23]; *Kentucky Right to Life v. Terry*, 108 F.3d 637, 645 (6th Cir.1997) ("This [*Aladdin's Castle* ] exception properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation. The record before us is devoid of any expressed intention by the Kentucky General Assembly to reenact the prior legislative scheme"); *Native Village of Noatak*,

**23.** The *Valero Terrestrial Corp.* found that post-*Aladdin's Castle* Supreme Court cases supported a narrow reading of the opinion. It explained:

"[I]n *U.S. Dep't. of the Treasury, Bureau of Alcohol, Tobacco and Firearms v. Galioto*, 477 U.S. 556, 106 S.Ct. 2683, 91 L.Ed.2d 459 ... (1986), a unanimous Supreme Court dismissed as moot a former mental patient's challenge to a firearms statute, because, after certiorari had been granted but before the case was decided, Congress amended the statute to permit former mental patients to apply for an exemption from the bar on firearms purchases by current and former mental patients. The Court did so without once inquiring whether the United States could be said to have 'voluntarily ceased' its prior practice of categorically refusing to permit former mental patients to purchase firearms." *Valero Terrestrial Corp., supra*, 211 F.3d at 116.

*supra,* 38 F.3d at 1510 ("As a general rule, if a challenged law is repealed or expires, the case becomes moot.... The exceptions to this general line of holdings are rare and typically involve situations where it·is virtually certain that the repealed law will be reenacted" (citations omitted)); *Barilla v. Ervin,* 886 F.2d 1514, 1521 (9th Cir. 1989) (holding that a statutory amendment mooted a challenge to the prior version of the law, and distinguishing *Aladdin's Castle* because "there is no indication whatsoever that the Oregon legislature intends to repeal the statutory amendments").

## C. Whether Plaintiff's Motion To Enjoin Enforcement Of The Prior Sign Ordinance Is Moot

As noted, "[t]he complete repeal of a challenged statute naturally renders a request for an injunction against application of that statute moot." *Rembert, supra,* 62 F.3d at 940; see also *Church of Scientology Flag Service, Org., Inc. v. City of Clearwater,* 2 F.3d 1509, 1511 (11th Cir.1993) (vacating a district court's order enjoining a former municipal ordinance on the basis that it was facially unconstitutional because it analyzed only the prior ordinance, which had been repealed and replaced by a new ordinance); *Campbell v. City of Chicago,* 823 F.2d 1182, 1183 (7th Cir.1987) ("On April 1, 1987, the Chicago City Council repealed all of ordinance § 28–22.1, except the 4,600 ceiling on the number of cabs. This development moots the plaintiffs' request for an injunction to prevent the City from enforcing the percentage guarantee provision, although not the request to enjoin the 4,600 cab license limit"); *Mease v. City of Shawnee,* No. Civ.A. 03–2041–M, 2003 WL 22102134, * 2 (D.Kan. July 18, 2003) (vacating a preliminary injunction restraining the enforcement of a city ordinance because "to the

extent that Ordinance 2625 has been repealed and has no force or effect, an order enjoining the enforcement of Ordinance 2625 is unnecessary"); *Thompson v. City of Chicago,* No. 01 C 6916, 2002 WL 922093, * 1 (N.D.Ill. May 3, 2002) (recommending dismissal of plaintiff's motion for preliminary injunction as moot because the ordinance to which it was directed had been repealed).

■ This rule applies here, since Covenant adduces no evidence that the City intends to reenact the Prior Sign Ordinance it repealed on June 20, 2005. Indeed, the only evidence in the record concerning the City's intentions strongly indicates that it will not reenact the ordinance. On the same day that it repealed the Prior Sign Ordinance, the City passed Resolution No.2005–34, titled "A Resolution Of The City Council Of The City Of Huntington Park[,] California Declaring The City Council's Intent In Taking Legislative Actions Regarding Sign Regulation." [24] Resolution No.2005–34 provides, *inter alia,* that

> "the City of Huntington Park has no intention to return to a sign ordinance which lacks a 'message substitution' provision, which freely allows substitution of any noncommercial message in place of any commercial message, without any additional permitting or approval; and [that it]
>
> ... has no intention to return to a sign regulation scheme which isolates signs pertaining to campaigns and elections as a discrete class[.]"

Covenant contends that the City's repeal of the Prior Sign Ordinance will expire on August 4, 2005, 45 days after the emergency legislation was enacted.[25] It notes that the Current Sign Ordinance was adopted pursuant to California Government Code

---

**24.** See Def.'s Opp., Exh. 14.

**25.** Pl.'s Reply at 6.

§. 65858(a), which provides in relevant part that:

"[w]ithout following the procedures otherwise required prior to the adoption of a zoning ordinance, the legislative body of a ... city ... may adopt as an urgency measure an interim ordinance prohibiting any uses that may be in conflict with a contemplated general plan, specific plan, or zoning proposal that the legislative body, planning commission or the planning department is considering or studying or intends to study within a reasonable time.... The interim ordinance shall be of no further force and effect 45 days from its date of adoption. After notice pursuant to Section 65090 and public hearing, the legislative body may extend the interim ordinance for 10 months and 15 days and subsequently extend the interim ordinance for one year." CAL. GOV'T. CODE § 65858(a).

The court need not resolve the effect of § 65858(a) on the Prior Sign Ordinance,[26] since Ordinance 754–NS has not yet been in effect for 45 days, and the City has indicated its intent to extend the ordinance for a period of 10 months and 15 days on the day Covenant's motion is heard.[27] There is no immediate likelihood, therefore, that the Prior Sign Ordinance will be revived.

Covenant argues alternatively that, even if the Prior Sign Ordinance was effectively repealed, its motion for preliminary injunction is not moot,[28] citing *Horizon Outdoor, LLC v. City of Industry, California,* 228 F.Supp.2d 1113 (C.D.Cal.2002). In *Horizon,* the court invoked the *Aladdin's Castle* mootness exception, holding that defendant's adoption of an urgency ordinance and later, a new sign ordinance, did not moot plaintiff's motion for preliminary injunction because the enactments showed that the city would continue to commit First Amendment violations. *Id.* at 1119 ("The issue of the constitutionality of the Urgency Ordinance and the New Ordinance is not currently before the Court. However, evidence of the retention of previously challenged provisions of the Sign Ordinance and Plaintiffs' arguments concerning the unconstitutionality of various portions of both ordinances have not been sufficiently rebutted by Defendant. The Court therefore finds that Defendant has

---

**26.** Neither party has briefed the effect of repealing an existing ordinance in an urgency ordinance that enacts replacement legislation, and the court has found no California authority directly on point. As a result, it declines to resolve this issue of California law. Should the City not extend the ordinance as it has indicated it will do, Covenant may bring this fact to the court's attention in an appropriate motion, and the court will consider the impact of Government Code § 65858(a) on repeal of the Prior Sign Ordinance following further briefing by the parties.

**27.** On July 18, 2005, the City Council of the City of Huntington Park will consider an ordinance to extent Ordinance 754–NS for an additional time period of ten months and 15 days, in accordance with California Government Code § 65858. (Notice Of Impending Legislative Action at 2.) The proposed ordinance states that "since the adoption of Ordinance No. 754–NS City staff has researched and gathered data in an effort to evaluate all possible information regarding signs, regulation and concerns related to the same, in order to determine and make recommendations for adequate and comprehensive regulation of signs within the City in conformity with community aesthetics, safety concerns, and the goals of the City's General Plan[.]" (*Id.,* Exh. A. at 1–2.) It explains that "forty-five days from the date of adoption of Ordinance No. 754–NS is not sufficient to adequately study and adopt necessary regulations for signs within the City[.]" (*Id.,* Exh. A at 2.) The text of the proposed ordinance suggests that return to the Prior Sign Ordinance is not imminent, and that the City is engaged in an ongoing process to determine how it will regulate signs.

**28.** Pl.'s Reply at 7–8.

failed to meet its burden to demonstrate that the likelihood that it will continue to violate the First Amendment is sufficiently remote to meet the stringent test for mootness").

The *Horizon* court's conclusion that it could properly enjoin the original sign ordinance appears to have been based not only on its invocation of the *Aladdin's Castle* exception, however, but also on its view that plaintiff had vested rights under the old sign ordinance.[29] See *id.* at 1121–22. Another court in this district has recently questioned that conclusion. See *Outdoor Media Group, Inc. v. City of Beaumont,* 374 F.Supp.2d 881, 883 (C.D.Cal. June 30, 2005) ("State law governs vesting of property rights in the context of government permits for land use.... In California, 'the mere application for a permit confers no vested property interest in the applicant.' ... More specifically, the California Supreme Court has explicitly stated in the context of billboards that a party's due process rights begin 'once a permit has been issued.' Plaintiffs argue that this court should be persuaded otherwise by *Horizon Outdoor, LLC v. City of Indus.,* 228 F.Supp.2d 1113 (C.D.Cal.2002).... [T]he court is not persuaded by *Horizon Outdoor* because it relies on Florida cases which based their

holdings on Florida law.... It is this court's view that it must apply ... California law, which provides that billboard erection rights do not vest until a permit for such issues and the permittee substantially relies on it by certain action").

■ The court agrees with the conclusion in *Outdoor Media.* In California, applicants for zoning permits obtain "vested" rights only when a valid permit issues and the permit holder undertakes substantial construction in reliance on the permit. See *Avco Community Developers, Inc. v. South Coast Regional Commission,* 17 Cal.3d 785, 791, 132 Cal.Rptr. 386, 553 P.2d 546 (1976) ("It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit"); *Toigo v. Town of Ross,* 70 Cal.App.4th 309, 321, 82 Cal.Rptr.2d 649 (1998) ("In California, the developer's right to complete a project as proposed does not vest until a valid building permit, or its functional equivalent, has been issued and the developer has performed substantial work and incurred substantial liabilities in good faith

**29.** The *Horizon* court discussion of the *Aladdin's Castle* exception addressed a motion to dismiss on grounds of mootness filed by defendant. See *Horizon, supra,* 228 F.Supp.2d at 1115, 1117–19 ("Dismissal of Plaintiffs' claims on the grounds of mootness is therefore not appropriate"). The court correctly concluded that the action was not moot, because the evidence showed there was a possibility that the unconstitutional conduct might recur. See *id.* at 1119 ("The Court therefore finds that Defendant has failed to meet its burden to demonstrate that the likelihood that it will continue to violate the First Amendment is sufficiently remote to meet the stringent test for mootness"); see also *id.* at 1118 (noting that the urgency ordinance defendant had adopted "incorporate[d] by reference

many of the provisions" of the initial, unconstitutional ordinance). Here, as in *Horizon,* the court concludes that Covenant's action is not moot and that defendant's request for *sua sponte* dismissal must be denied as a result. This is a different question than whether a preliminary injunction restraining enforcement of the Prior Sign Ordinance should issue, however. As to that question, the court concludes that Covenant's request for such relief is moot, because, as discussed *infra,* it obtained no vested rights under the Prior Sign Ordinance by submitting permit applications, and because the evidence shows that there is no reasonable likelihood that the City will return to the Prior Sign Ordinance in the future.

reliance on the permit"); *Billings v. California Coastal Commission*, 103 Cal. App.3d 729, 735, 163 Cal.Rptr. 288 (1980)("A vested right to complete the project arises only after the property owner has performed substantial work, incurred substantial liability and shown good faith reliance upon a governmental permit. The vested rights rule is neither a common law rule nor a constitutional principle, but a manifestation of equitable estoppel" (citations omitted)); *Anderson v. City Council of City of Pleasant Hill*, 229 Cal.App.2d 79, 89, 40 Cal.Rptr. 41 (1964) ("[R]espondents have been unable to cite a single California decision in which a property owner has been held to have acquired a vested right against future zoning without having first acquired a building permit to construct a specific type of building and having thereafter expended a considerable sum in reliance upon said permit. Such authority would appear nonexistent for the reason that the vested rights theory is predicated upon estoppel of the governing body. Where a building permit to erect a specific type of building is issued by a county or city and the permittee acts upon it and incurs obligations, or in good faith commences construction, his rights become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted. Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel" (internal citation omitted)).[30]

The principle has been applied specifically in the context of permits to erect billboards. *See West Coast Advertising Co. v. City and County of San Francisco*, 256 Cal.App.2d 357, 64 Cal.Rptr. 94 (1967) (holding that a zoning administrator acted within his discretion in denying an application for a permit to construct a billboard based on a pending ordinance that would render erection of the billboard illegal, and that the issuance of a writ of mandate requiring that a permit be granted under the former ordinance did not give petitioner a vested right to a building permit where no permit in fact issued, and no substantial construction or reliance thereon occurred).[31]

---

**30.** The rule that rights do not vest prior to substantial investment in reliance on a permit applies, even where a permit application was denied in bad faith. See 9 Harry D. Miller and Marvin B. Starr, CALIFORNIA REAL ESTATE, § 25:224 (3d ed. 2004) ("If there is a rezoning ordinance that becomes effective *before the permit is issued*, the developer is subject to the terms and conditions of the new ordinance, except where the local agency has acted in bad faith and enacted the change in the law solely for the purpose of 'spot zoning' and discriminating against a particular property to defeat a particular development. In cases of bad faith the developer may be able to invalidate the discriminatory ordinance and may be entitled to the permit, but *he or she is not entitled to vested rights until improvements have been constructed*" (emphasis added)).

**31.** Certain depublished opinions of the California Courts of Appeal also apply the principle to applications for billboard permits. See, e.g., *Eller Media Co. v. City of Los Angeles*, No. B159378, 2003 WL 21744316, *5 (Cal.App. July 29, 2003) (Unpub. Disp.) (holding that a party that erected a billboard pursuant to a permit that was erroneously issued had no vested right to maintain the billboard when the error was discovered and thus that defendant properly revoked the permit, and stating: "Typically the vested right doctrine is asserted when a party was issued a valid permit for a project that was lawful at the time the permit was issued, but thereafter a change in the law rendered the project unlawful. By performing substantial work and incurring substantial expense in reliance on the valid permit before the change in the law, the party may have acquired a vested right to complete the project.... This theory does not apply where, as here, an invalid permit was issued in error" (emphasis omitted)); *Eller Media Co. v. City of Los Angeles*, No. B146714, 2002 WL 1963860, *6 (Cal.App. Aug.26, 2002) (Unpub.Disp.) ("Eller's contention it had a vested right to construct a two-faced billboard in reliance upon the permit is meritless. If a property owner 'has per-

Accordingly, to the extent that the court in *Horizon* relied on the fact that the plaintiff had vested rights in the issuance of a permit under the old ordinance in concluding that its request for a preliminary injunction was not moot, this court respectfully disagrees. Here, the City has repealed the challenged ordinance in its entirety,[32] has adopted a resolution disavowing any intention to reenact the repealed ordinance or any similar ordinance,[33] and has adopted a Current Sign Ordinance that contains provisions that differ significantly from those found in the original ordinance.[34] Under these circumstances, the court is bound by Ninth Circuit authority holding that the repeal of a challenged ordinance moots a request to enjoin that ordinance unless the facts suggest that defendant intends to reenact the challenged law. See *Native Village of Noatak, supra,* 38 F.3d at 1510; *Barilla, supra,* 886 F.2d at 1521; accord *Federation of Advertising Industry Representatives, Inc. v. City of Chicago,* 326 F.3d 924, 930 (7th Cir.2003) (holding that, where there is no reasonable expectation the city will reenact the challenged legislation, the "repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief").

 Covenant next argues that its request for an injunction is not moot because "a large portion of the challenged provisions from the Sign Ordinance are not substantively changed in the temporary measure." [35] The repeal of a challenged ordinance does not render a case moot where the new ordinance adopted in its place is substantially the same as the challenged ordinance or disadvantages plaintiff "in the same fundamental way." *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) ("*City of Mesquite* does not stand for the proposition that it is only the possibility that the selfsame statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect"); *Public Service Co. of Colorado v. Shoshone–Bannock Tribes,* 30 F.3d 1203, 1205 (9th Cir.1994) ("Where the threatened harm still exists, or the changes in the law do not resolve the conflict, the case remains alive and suitable for judicial determination").

To decide this motion, however, the court need not determine whether the Current Sign Ordinance is substantially similar to the Prior Sign Ordinance. Whether a newly enacted ordinance is substantially similar to a prior law or whether it disadvantages plaintiff in the same fundamental way goes to whether the *action* is moot; it does not provide a basis for the court to enjoin enforcement of the prior ordinance. See *Church of Scientology Flag Service Org., Inc. v. City of Clearwater,* 777 F.2d 598, 605–06 & n. 22 (11th

formed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit.... Here, Eller's reliance could not have been in good faith in that Eller disregarded an obvious question concerning the validity of the permit," quoting *Avco Community Developers, supra,* 17 Cal.3d at 791, 132 Cal.Rptr. 386, 553 P.2d 546).

32. Def.'s Opp., Exh. 1 at 2.

33. *Id.,* Exh. 14.

34. Whether these changes make the Current Sign Ordinance constitutional is an issue the court need not reach in deciding the pending motion.

35. *Id.* at 12–13.

Cir.1985) (stating that where there was no evidence that defendant intended to reenact the repealed ordinance, "[t]he proper course of action would have been to allow the plaintiffs to amend their complaints and proceed to litigate the ordinance then in effect," and noting that "there are numerous cases illustrating the principle that where a challenged ordinance is amended during litigation the appropriate course is to proceed to a consideration of the amended ordinance"), cert. denied, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986); *Rembert, supra,* 62 F.3d at 940 ("The complete repeal of a challenged statute naturally renders a request for an injunction against application of *that statute* moot" (emphasis added)); see also *Naturist Society, Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992) (noting that an appellate court reviewing a district court decision after the amendment of a challenged law must consider the law as it then stands, since "a superseding statute or regulation moots a case ... to the extent that it removes challenged features of the prior law"); *Lockridge v. Village of Alsip, Illinois,* No. 03 CV 6720, 2005 WL 946880, * 4, n. 7 (N.D.Ill. Apr.18, 2005) ("Lockridge has filed a 'Statement in Regard to Defendant's Revised Sign Regulations,' but even this document offers only a brief argument as to the revised ordinance's constitutionality. If Lockridge wished to place these issues before the court, he could have requested leave to amend his complaint or to file a supplemental complaint to account for the new ordinance, but has failed to do so").

The relief sought in this motion—"an order preliminarily enjoining enforcement of the [Prior] Sign Ordinance"[36]—is unavailable, because there is no longer an active case or controversy as respects the enforcement of that law. See *Church of Scientology, supra,* 777 F.2d at 604–06 (holding that, where the challenged ordinance was repealed and replaced with a new ordinance prior to consideration by the district court, the district court erred in proceeding to declare the unconstitutionality of the repealed ordinance). Accordingly, although Covenant may be able to demonstrate its entitlement to injunctive relief restraining enforcement of the Current Sign Ordinance by showing that the ordinance is unconstitutional and that it injures plaintiff "in the same fundamental way" as the Prior Sign Ordinance, it may not seek to enjoin a law that has no continuing effect.[37]

**36.** Notice Of Motion And Motion For Preliminary Injunction at 2.

**37.** Covenant suggests that, like its predecessor, the Current Sign Ordinance lacks procedural safeguards, such as time limits for granting or denying applications and a process for appealing application denials. It contends that this provides a basis for granting an injunction. (See Pl.'s Reply at 17–19.) The City counters that there is no requirement that a sign ordinance contain time limits for process permit applications if the permitting scheme operates in a content-neutral manner. (See Def.'s Opp. at 17).

In a 2002 challenge to an ordinance governing large-scale events at a municipal park, the Supreme Court held that the procedural safeguards related to prior restraints on speech required by *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), including time limits on the processing of permit applications and appeals, were not required where the challenged permitting scheme was a content-neutral time, place and manner restriction. *Id.* at 322–32. The Court emphasized that it had "never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman.*" *Id.* The principle articulated in *Thomas* has been applied to cases involving sign ordinances. See, e.g., *Tarr v. Warner,* 60 Fed. Appx. 82, 84, 2003 WL 722166, * 1 (9th Cir. Feb.28, 2003) (Unpub.Disp.) ("the [Oregon Motorist Information Act] is a content-neutral time, place, and manner restriction that treats commercial and noncommercial speech equally. Thus, we apply *Thomas* and hold that *Freedman* is inapplicable to the OMIA"); *Granite State Outdoor Advertising, Inc. v. City*

Because the City has repealed the Prior Sign Ordinance and because uncontroverted evidence shows it does not intend to reenact it, Covenant's request for an injunction restraining enforcement of the Prior Sign Ordinance is moot. Consequently, Covenant cannot show a possibility of success on the merits of its request for an injunction against the Prior Sign Ordinance, it is not entitled to a preliminary injunction. See *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir.1987) ("[a]s an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits"); see also *Miller, supra,* 19 F.3d at 460 (quoting *Arcamuzi* ).

### D. Whether The Current Record Supports Dismissal Of The Action

■ The City contends that "[t]he Court should seriously consider *sua sponte* dismissal." [38] It cites several cases in which the court determined that an entire action was mooted by the defendant's repeal of a challenged sign ordinance.[39] The court declines to dismiss the entire action on the current record. Covenant may be able to establish that it is entitled to an injunction against enforcement of the Current Sign Ordinance if it can prove the merits of its constitutional challenge and show that the Current Sign Ordinance harms it "in the same fundamental way" as the Prior Sign Ordinance did. See *Northeastern Florida Chapter of Associated General Contractors of America, supra,* 508 U.S. at 662, 113 S.Ct. 2297.

*of St. Petersburg,* 348 F.3d 1278, 1283 (11th Cir.2003) (holding "that the lack of time limits [in the city's content-neutral sign ordinance] is constitutionally acceptable"); *Granite State Outdoor Advertising, Inc. v. City of Clearwater,* 351 F.3d 1112, 1118 (11th Cir. 2003) ("Time limits are required when their lack could result in censorship of certain viewpoints or ideas, but are not categorically required when the permitting scheme is content-neutral" (emphasis and citation omitted)).

The Ninth Circuit has held that a "substitution provision" such as that included in the Current Sign Ordinance renders an ordinance's regulation of noncommercial speech content-neutral. See *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 815 (9th Cir.2003) ("The ordinances are neutral with respect to noncommercial speech because the substitution clause guarantees that political and other noncommercial messages are not limited to one or the other type of sign-structure"); *Outdoor Systems, Inc. v. City of Mesa,* 997 F.2d 604, 615 (9th Cir.1993) (holding that two sign codes incorporating provisions that allowed the substitution of any noncommercial message for an existing commercial and/or noncommercial message were content-neutral restrictions on the place and manner of speech). It appears, therefore,

that under federal law, the Current Sign Ordinance is content-neutral as to commercial and noncommercial speech. Although plaintiff contends that the Current Sign Ordinance "imposes severe limitations on commercial content" by permitting only on-site signs (see Pl.'s Reply at 14–16), the Ninth Circuit has made clear that "the on-site/off-site distinction is not an impermissible content-based regulation." *Id.* at 813.

Because the necessity for including procedural safeguards in a sign ordinance is linked to the content of the ordinance in question, Covenant's challenge to the procedural scheme set forth in the Prior Sign Ordinance does not survive the repeal of that ordinance. To the extent Covenant seeks to challenge the procedural scheme set forth in the Current Sign Ordinance, it must first address whether the Current Sign Ordinance is a content-neutral time, place, and manner restriction or a content-based permitting scheme.

38. Def.'s Opp. at 1.

39. *See id.* at 8 (citing *Granite State Outdoor, supra,* 303 F.3d 450; *National Advertising v. Denver,* 912 F.2d 405 (10th Cir.1990); *Federation of Advertising Industry Representatives, supra,* 326 F.3d 924).

Alternatively, a live case or controversy may exist if Covenant can state a claim for compensatory or nominal damages based on the City's past enforcement of the Prior Sign Ordinance. See *Buckhannon Board & Care Home v. W. Va. Department of Health & Human Res.*, 532 U.S. 598, 608–09, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case"); *Naturist Society, Inc., supra*, 958 F.2d at 1519 ("[T]he claim for damages saves from mootness the Society's contention that the 'old' park regulations were unconstitutional as applied to it"). Covenant has cited cases indicating that a party subjected to an unconstitutional sign ordinance is entitled to at least nominal damages. See *KH Outdoor, L.L.C. v. City of Trussville, Alabama*, 366 F.Supp.2d 1141, 1142 (N.D.Ala. 2005) (awarding nominal damages based on defendant's enforcement of an unconstitutional sign ordinance); see also *Burkhart Advertising, Inc. v. Auburn*, 786 F.Supp. 721, 733–34 (N.D.Ind.1991) ("To bring a successful § 1983 action, a plaintiff must prove that a defendant has deprived him of a right secured by federal law or the Constitution while acting under color of state law. See 42 U.S.C. § 1983.... [P]laintiffs have successfully shown that constitutional rights were violated. Thus, plaintiffs have successfully proven that they are entitled to § 1983 sanctions against defendants" (citation omitted)). At least one court has awarded damages based on prior enforcement of a since-repealed sign ordinance, despite the fact that injunctive relief was no longer available. *Lockridge, supra*, 2005 WL 946880 at \* 5 ("What saves Lockridge's case from being entirely mooted is that, in addition to injunctive relief, Lockridge has requested damages and attorneys' fees and costs. Alsip's repeal of the Former Ordinance does not moot Lockridge's damages claim.... Thus, Lockridge has successfully argued that, to the extent that the applications related to the Nonprecluded Signs were denied, Alsip 'has deprived him of a right secured by federal law or the Constitution while acting under color of state law.' 42 U.S.C. § 1983. Thus, Lockridge is entitled to § 1983 damages against Alsip"); see also *Boulder Sign Co. v. City of Boulder City*, CV–S–04–0314–PMP (RJJ), 2005 U.S. Dist. LEXIS 13809, \* 18–19 (D.Nev. Feb. 23, 2005) (declining to dismiss an action as moot because of the repeal of a sign ordinance, since "Boulder Sign seeks damages in addition to injunctive relief. Although it is unclear at this stage what the measure of damages may be for Plaintiff Boulder Sign should it succeed on its claims, because Boulder Sign seeks damages for past conduct, the sign ordinance change does not moot the controversy. However, Boulder Sign may not pursue injunctive relief against an ordinance no longer in existence").

Covenant also contends that it is entitled to an award of attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5,[40] because it was a "catalyst" in the City's repeal of the Prior Sign Ordinance. It does not appear that an entitlement to attorneys' fees, standing alone, is sufficient to avoid dismissal. If an action

---

**40.** This statute provides, in relevant part, that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." CAL. CODE CIV. PROC. § 1021.5

is dismissed, a party entitled to do so may seek attorneys' fees under § 1021.5. See *Tipton–Whittingham v. City of Los Angeles,* 316 F.3d 1058, 1061 (9th Cir.2003) ("On a joint motion of the parties, the district court dismissed the plaintiffs' claims for injunctive relief. Approximately one year later, the plaintiffs moved for catalyst attorneys' fees and costs under California Code of Civil Procedure § 1021.5 and the California FEHA. They asserted they had prevailed on their state and federal injunctive relief claims as evidenced by the City's policy changes, and they contended their efforts had brought about those changes. United States District Judge Terry J. Hatter, Jr. granted the motion, awarding the plaintiffs costs and more than $1,703,383. in attorneys' fees"); *Citizens For Responsible Government v. Davidson,* 236 F.3d 1174, 1183 (10th Cir.2000) ("the general rule is that 'an interest in attorney's fees is insufficient to create an Article III case or controversy where a case or controversy does not exist on the merits of the underlying claim'"); *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1329 (9th Cir. 1999) ("noting that attorneys' fees 'are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot'"); *Midpeninsula Citizens for Fair Housing v. Westwood Investors,* 221 Cal.App.3d 1377, 1393, 271 Cal.Rptr. 99 (1990) ("We reverse the judgment and remand the matter with directions that the trial court dismiss the action as moot. The trial court may nonetheless entertain a motion by plaintiff for attorneys' fees under Code of Civil Procedure section 1021.5").

Nonetheless, because Covenant has asserted a claim for at least nominal damages, the court concludes that the action is not moot, and declines to dismiss it, Should Covenant wish to mount a facial challenge to the Current Sign Ordinance, it is directed to file an amended complaint adding such a claim on or before the deadline for the filing of motions or stipulations seeking to amend pleadings to add new parties, new claims or new defenses. Because this order authorizes the filing of such an amended complaint, no stipulation or motion seeking leave to amend will be required.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction is denied.